Transports, Inc., and Rodger E. King, Petitioners,

*v.*

Viola Perry and Buford Perry, Respondents.

414 S.W.2d 1.

(*Jackson,* April Term, 1966.)

Opinion filed March 17, 1967.

58

Erich W. James and Allen Cox, Jr., of counsel, Waring, Walker, Cox & Lewis, Memphis, for petitioners.

Taylor & Taylor, Memphis, for respondents.

MR. SPECIAL JUSTICE WILLIAM J. HARBISON delivered the opinion of the Court.

These two cases arose out of an automobile-bus collision which occurred in Memphis, Tennessee, on August 2, 1963, and were consolidated for trial. The parties will be referred to herein as they appeared in the trial court.

Plaintiff, Mrs. Viola Perry, was a passenger in an automobile which was struck from the rear by a bus being driven by the defendant, Rodger E. King, and owned by his employer, Transports, Inc. Mrs. Perry sued for personal injuries allegedly sustained by her in

the accident, and her husband sued for loss of consortium, medical and hospital expenses incident to the injuries sustained by his wife. The cases were tried for four days in the Circuit Court of Shelby County, Tennessee. The defendants denied liability, and also strenuously controverted the claims of Mrs. Perry as to the degree and extent of injuries suffered by her as a result of this accident. The jury returned a verdict in favor of Mrs. Perry for $1,000.00 and in favor of her husband, Buford Perry, for $3,000.00. The trial judge approved these verdicts and plaintiffs appealed to the Court of Appeals. That court reversed the judgments and remanded the cases for a new trial, primarily upon the theory that the verdicts were inconsistent and irreconcilable. The primary assignment of error made before the Court of Appeals by the plaintiffs was the inadequacy of the verdicts, and all other assignments were incidental thereto. The Court of Appeals sustained this primary assignment, and also held that the trial judge committed error in excluding an excerpt from a medical deposition and in giving a special instruction to the jury at the request of the defendants.

The Court of Appeals reached its decision largely upon the basis that if Mrs. Perry was entitled only to $1,000.00 for the injuries sustained by her in the accident, then the verdict in favor of her husband was excessive. On the other hand, the husband had testified to having incurred medical, hospital and drug bills in excess of $3,100.00. The Court of Appeals felt that since the jury had awarded him almost this amount, then the jury must have found that the expenses incurred by him were for the necessary treatment and cure for his wife resulting from injuries sustained by her in the accident. The Court

of Appeals, therefore, reasoned that the verdict in favor of the wife was inadequate if the verdict for the husband should be sustained.

This Court granted a petition for certiorari filed by the defendants. We have heard oral arguments and have considered the briefs and the record in the case. We have concluded that the Court of Appeals was in error in setting aside the jury verdicts, and we are of the opinion that the verdicts of the jury, concurred in and approved by the trial judge, should be reinstated.

As stated, the accident out of which these cases arose occurred on August 2, 1963. There was very little damage to either vehicle in the accident, and the testimony generally indicates that there was a minor impact between the defendants' bus and the automobile in which Mrs. Perry was riding. Mrs. Perry did not enter the hospital until August 15, 1963. There is testimony that immediately following the accident she stated that she was not injured. There is, however, other testimony that she made complaint of injury immediately after the accident and during the next several days. She was examined in the emergency room of St. Joseph Hospital immediately after the accident, and then remained at home for the next thirteen days. She appeared in Traffic Court in the interim in connection with charges filed against the bus driver arising out of the accident.

Mrs. Perry entered St. Joseph Hospital on August 15, 1963, and remained there until October 5, 1963. The surgeon who had attended her in the interim between the date of the accident and her admission to the hospital, Dr. E. A. Crawford, testified that she sustained a whiplash or cervical strain in the accident. X-rays of the

lumbar spine at that time showed some degenerative changes. The doctor treated her on several occasions, but while her neck condition improved somewhat, a painful condition in her lower back became more severe, according to his testimony. He admitted her to the hospital on August 15, and called in a neurosurgeon, Dr. Peter Wallace.

Dr. Wallace, as well as every other physician who testified in this case, stated that Mrs. Perry was a most difficult patient to evaluate, but that when she failed to respond to some ten days of traction and other conservative therapy, he felt that a myelogram should be done to rule out nerve root compression. The myelogram was performed on August 28, 1963, and as a result thereof the doctor suspected a herniated disc. In view of the myelographic study, Dr. Wallace recommended exploratory surgery, and this was performed on September 3, 1963. No herniated disc was found, but "a hard bulging mass running transversely, which was a lumbar bar underneath the nerve root at the L-4 interspace" was found. Dr. Wallace described this as a bony, hard area of calcification which is called degenerative or hypotrophic arthritis, which, he said, "is known to take a long time to form."

Mrs. Perry was discharged from St. Joseph Hospital on October 5, 1963, but thereafter she developed numerous other complaints, including an alleged loss of continence with respect to her bodily functions, alternating periods of constipation and diarrhea, numbness in the vagina and a number of other symptoms and complaints.

The voluminous medical testimony in the record indicates that Mrs. Perry had a hysterectomy performed in 1946 and that she had a series of injections for hemor-

rhoids, and had subsequently had hemorrhoids removed in the 1940's. She had further rectal surgery in 1960, and there is evidence that from that time through the date of the accident she had made complaints of difficulty in controlling her bodily functions. She had numerous other operations and complaints over a period of many years prior to this accident.

It is sufficient to say that the medical testimony in this record is highly conflicting, and there is serious controversy as to whether Mrs. Perry sustained any significant injuries whatever in the accident, or as to whether the accident aggravated or heightened any of her pre-existing complaints. An independent neurosurgeon, appointed by the trial judge, gave a report which was read in evidence on behalf of the defendants, and this report contained little which could afford encouragement to the plaintiffs in support of the claim that Mrs. Perry sustained significant injury in this automobile accident, or an injury which would have necessitated the surgery which was later performed. This physician, Dr. Murphrey, found no objective evidence of cervical strain, expressed doubt as to whether the low back was injured in the accident, and stated that he did not believe Mrs. Perry had sustained all of the sensory losses such as she claimed.

■ In the declaration filed on behalf of plaintiffs it was alleged that Mrs. Perry had sustained a fractured vertebra in her spine as a result of the accident, but this allegation was entirely unsupported by proof. There was no claim in the declaration that plaintiff had suffered from pre-existing conditions which were aggravated by this accident, and, on its face, the declaration claimed that all of the complaints and symptoms from which plaintiff

later suffered were directly and proximately caused by the accident. Nevertheless, in view of the manner in which the proof developed, the trial judge fully charged the jury on the law with respect to aggravation of pre-existing conditions, and no complaint was made with respect to this portion of the charge. At the request of the defendants, however, the trial judge did give a special instruction to the general effect that the defendants would not be liable for medical treatment, or the results thereof, which were not caused or necessitated by this accident. In view of the highly conflicting testimony in the record, we think that the charge was justified, particularly when read with the instructions given on the question of aggravation of a pre-existing condition. There was credible evidence that Mrs. Perry had suffered from some of her complaints for years prior to the accident and also material proof that other conditions of which she complained after the accident could have resulted from other causes than the accident or the surgery.

There was some evidence from which the jury might have found that the loss of continence, numbness in the vagina and other complaints later reported by Mrs. Perry were due to the laminectomy or exploratory surgery itself, and plaintiff correctly insists that if this were true, the defendants would still be liable for the same if the surgery itself was made necessary and was itself a direct and proximate result of the injury sustained in the accident. There was material evidence, however, from which the jury could have found that the surgery performed was not really made necessary by any injury or aggravation thereof sustained in this accident.

This Court, like most others, recognizes that if one is injured by the negligence of another, and these

injuries are aggravated by medical treatment (either prudent or negligent), the negligence of the wrongdoer causing the original injury is regarded as the proximate cause of the damage subsequently flowing from the medical treatment. See *Revell v. McCaughan*, 162 Tenn. 532, 538, 39 S.W.2d 269 (1931); *Shipley v. Wellwood Silk Throwing Mills*, 164 Tenn. 281, 47 S.W.2d 561 (1932); *Mallette v. Mercury Outboard Supply Co.*, 204 Tenn. 438, 450, 321 S.W.2d 816 (1959). We do not understand that the defendants controvert this well settled principle of law. The defendants have insisted throughout the case, however, that fact issues were presented as to whether or not there actually was any aggravation of Mrs. Perry's pre-existing symptoms and disabilities either by the accident itself or by the surgery following the accident. We agree with this position of the defendants. In view of the conflicting testimony and many different permissible inferences therefrom in this record, we are of the opinion that all of these issues were properly submitted to the jury by the trial judge, and were appropriately covered by the instructions given.

It is, of course, apparent from the amount of the verdict awarded Mrs. Perry that the jury was not impressed by her testimony or by the medical proof which she offered as being in support of her claim. From our reading of this record we are satisfied that the jury was well within its province in refusing to accept much of her testimony. Her complaints were unusual to say the least, and often bordered upon the bizarre. As stated, all of the doctors who examined her testified that she was extremely difficult to evaluate. Some of her complaints were said to conform to no known anatomical pattern. There was evidence from which the jury could have

found that the injuries which she actually sustained in this accident were minimal.

Serious issues were presented as to credibility of Mrs. Perry and, to some extent, of at least some of the physicians who examined her. Numerous discrepancies were developed between the testimony of Mrs. Perry and her own physicians. We, therefore, are satisfied that the judgment of the jurors and of the trial judge, who saw and heard this plaintiff and her husband, and who heard the testimony of the doctors, should be given weight, and we see no basis in this record for disturbing the same.

It is true, of course, that the jury awarded the husband more than it awarded Mrs. Perry. It is to be noted, however, that he sued not only for medical expenses but for loss of consortium of his wife. His claim involved a number of elements of damages, which were not allocated or specified by the jury in its general verdict. To say the least, the jury did not award him all of the medical, hospital or drug expenses which he claimed; further, it certainly does not follow that all of the $3,000.00 which it awarded him was necessarily allocated to the special damages which he claimed to have incurred. At least a portion of the judgment may have been awarded to him for such loss of services or consortium of his wife as the jury felt justified under the circumstances.

■ It was conceded in argument before this Court that the two verdicts are not necessarily inconsistent as a matter of law. There is no legal inconsistency such as that in the case of *Southern Railway Co. v. Butts*, 214 Tenn. 328, 379 S.W.2d 794 (1963) (where the jury dismissed the wife's suit but awarded her husband a verdict), or *Milliken v. Smith*, 218 Tenn. 665, 405 S.W.2d 475 (1966) (where in one case a driver was awarded a

verdict as plaintiff but was held liable as a defendant in a companion case which was consolidated for trial). Indeed, it was not even assigned as error in the motion for a new trial or on appeal that the verdicts were legally inconsistent. The assignment of error simply was to the effect that the verdicts were inadequate.

■ It is, of course, well settled in this jurisdiction that in personal injury suits the amount of damages is primarily for the determination of the jury, and that next to the jury, the most competent person to pass upon the amount representing fair compensation for personal injuries is the trial judge. See *Crutcher v. Davenport,* 55 Tenn.App. 413, 401 S.W.2d 786 (W.S.1965); *Crowe v. Provost,* 52 Tenn.App. 397, 374 S.W.2d 645 (M.S.1963); *Meeks v. Yancey,* 43 Tenn.App. 667, 311 S.W.2d 329 (W.S. 1957); *Reeves v. Catignani,* 157 Tenn. 173, 7 S.W. 2d 38 (1928).

■ We are of the opinion that the verdict of the jury in Mrs. Perry's case was not so grossly inadequate as to evince passion, prejudice, or unaccountable caprice on the part of the jury, or so inadequate as to shock the conscience of the court, in view of the numerous discrepancies and conflicting testimony embodied in this record. Reliance is placed by plaintiffs upon the case of *Flexer v. Crawley,* 37 Tenn.App. 639, 269 S.W.2d 598 (W.S. 1938), where the Court of Appeals reversed a judgment on the ground that the same was grossly inadequate, and this Court denied certiorari. In that case, however, the opinion of the Court of Appeals contains the following statement:

* * * there was no proof in the record on the part of defendant contradicting plaintiff or the testimony of

her three doctors concerning medical expenses or injuries sustained. One of plaintiff's doctors referred to some domestic worries which plaintiff had at the time of the injury which delayed or retarded her recovery, but from the uncontradicted evidence of the doctors and the plaintiff and her witnesses, it clearly appears that the injuries sustained were the direct and proximate result of the automobile collision involved in this litigation. 37 Tenn.App. at 644, 269 S.W.2d at 600.

Certainly this statement is not applicable to the record in the present case, where there is conflicting proof concerning the degree and extent of the injuries, concerning the question of whether or not the medical treatment received by plaintiff after the accident was really made necessary by the accident, and concerning the effects, if any, of that treatment. While it may be said that the award to the husband seems high if the verdict of $1,000.00 to Mrs. Perry is permitted to stand, no complaint on that score has been made and that question is not before us. The defendants for obvious reasons have acquiesced in the verdicts and have taken no appeal therefrom.

The Court of Appeals pretermitted two of the assignments of error made by plaintiffs before it. After this Court granted certiorari, however, the plaintiffs did not assign such action of the Court of Appeals as error. Accordingly those assignments may not be reviewed here. *LaFont v. Robinson,* 204 Tenn. 1, 315 S.W.2d 266 (1958). See T.C.A. sec. 27-823.

As incidental to its holding the Court of Appeals did sustain one of plaintiff's assignments relating to the exclusion of a portion of the deposition of Dr. Utterback. We have examined this testimony carefully and are of the

opinion that at most the ruling of the trial judge thereon would have been harmless error, if error at all. We certainly cannot say that the exclusion of this single question and answer had any material effect upon the outcome of the trial.

After a thorough consideration of this case, we are of the opinion that the Court of Appeals was in error in disturbing the jury verdicts and judgment of the trial court in these cases. The judgment of the Court of Appeals is reversed and the judgment of the trial court is reinstated. The costs in the trial court and the Court of Appeals are taxed to the defendants below, and costs in this Court are taxed to the plaintiffs.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.